1810.

Shipley
vs
Alexander

prayer, (but which it is not necessary to state here,) he excepted; and the verdict and judgment being against him, he brought the present writ of error.

The cause was argued before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J. by

Key, for the Plaintiff in error; and by
Taney, for the Defendant in error.

JUNE.

SHIPLEY VS. ALEXANDER.

In trespass for mesne profits of land recovered in an action of ejectment—Held, that the judgment in the ejectment was legal and sufficient evidence to support the action, notwithstanding the judgment had been removed to, & was depending in the court of appeals, on writ of error prosecuted by the defendant, and bond having been given as required by law; and altho' no writ of possession had ever issued, and the plaintiff had not made any entry into the premises since bringing the ejectment. That the tenant in possession was estopped by his confession of lease, entry and ouster, and could not controvert either the title or possession of the plaintiff; and it was sufficient for the plaintiff to produce the judgment alone, without showing the writ of execution executed, or possession acquired in any other manner

ERROR to Anne Arundel County Court. Trespass for mesne profits, brought by the defendant in error against the plaintiff in error, on the 22d of February 1806, for the use and occupation of a tract of land called Frog Range, from the 1st of January 1803, until the 21st of February 1806. The general issue was pleaded; and at the trial, the plaintiff in the court below offered and read in evidence a record of proceedings and judgment recovered in the general court at October term 1805, in an action of ejectment, brought in the name of his lessor against the present plaintiff in error, for the recovery of possession of the above mentioned land. The plaintiff then offered evidence of the value of the mesne profits of such land, from the 1st of January 1803 to the 22d of February 1806. It was admitted, on the part of the plaintiff, that the above judgment was rendered on the 10th of November 1805, removed to the court of appeals by the defendant, under and in virtue of a writ of error, and that she gave bond, with sureties, as the law requires, and that the writ of error was still depending in the court of appeals. It was further admitted by the plaintiff, that no writ of possession had ever issued on the judgment, and that he had not made any entry into the premises since the institution of the action of ejectment. The defendant then prayed the court to direct the jury, that the plaintiff was not entitled to recover in this action. But the county court, [Chase, Ch. J.]

refused to give the direction, being of opinion that the judgment in the action of ejectment was legal and sufficient evidence to support this action for the mesne profits. The defendant excepted; and the verdict and judgment being against her, she brought the present writ of error.

The cause was argued before BUCHANAN, GANTT, and EARLE, J.

*T. Buchanan*, for the plaintiff in error. The question is, whether or not *mesne profits* can be recovered during the pendency of the action of ejectment in the appellate court, and where the plaintiff is not in possession of the land, for the profits of which the action is brought? No person can support an action of trespass, unless he is in possession. An heir or devisee cannot support trespass before entry—after an entry, the law refers the entry to the time his right accrued. So here, the defendant in error could not support the action, not having obtained possession under his judgment in ejectment; if he had obtained such possession, his entry would have related to the time his title accrued. He cited *Bull. N. P.* 86. 1 *Esp. Dig.* 444. *Aslin vs. Parkin*, 2 *Burr.* 665. *Compere vs. Hicks et al.* 7 *T. R.* 723; and 3 *Blk. Com.* 210.

*Martin*, for the defendant in error. The case of *Aslin vs. Parkin*, 2 *Burr.* 665, was an action for mesne profits brought after judgment by default against the *casual ejector*, in an ejectment, in the name of the lessee of *the nominal plaintiff*, against *the tenant in possession*. It was objected that the action could not be supported without proving *actual entry* in the plaintiff; and as the plaintiff was *nominal*, no actual entry could be proved to have been made by him. The court determined the action to be sustainable, and that it made no difference whether the judgment was on verdict or by default. The case of *Compere vs. Hicks et al.* 7 *T. R.* 723, is that of a fine; and it is a fixed principle of law, that there must be an *actual entry* to avoid a fine, before ejectment or trespass can be brought. Neither of these cases militates even in appearance against the decision of the court below in this case. In 1 *Esp.* 404, we are told that a person cannot maintain an action of trespass before an *entry* and *actual possession*, though he hath the *freehold in law*. Hence, therefore, the heir cannot bring

1810.    trespass against an *abator* before actual entry.. Nor can
Shipley   disseisee against disseisor, except for the *act of disseisin;*
vs        but for injuries done *afterwards,* disseisee cannot bring
Alexander trespass until *actual entry.* 3 *Blk. Com.* 210, states the
law in the same manner; as also doth *Bull. N. P.* 86.
These three last are elementary treatises, and all cite as
their authority for what they have stated, 2 *Roll. Ab.* 553,
and *Roll.* cites 19 *Henry* VI, 28, b. And as the authority
on which it is founded. was, during the feudal system, so
did the doctrine itself depend entirely upon the principles
of the feudal system, and the tenures growing out of it.
Under that system no person could have a *freehold* in
lands without the concurrence of the lord, and without
some act done by the lord giving investiture of the free-
hold to the tenant. "*Sciendum est feudum sine investitu-*
*ra, nullo modo constitui posse.*" 2 *Craig,* Lib. 2, tit. 2.
Upon every *descent* or alienation, during times of pure
feudal tenure, the lord *gave,* and therefore he only could
change, the *seisin* or *investiture.* 3 *Blk. Com.* 170.
Thus, therefore, by the death of the ancestor, the *heir* or
*devisee* could not become the *actual tenant of the freehold,*
without an act done by the lord, to wit, the giving him
*seisin* and *investiture.* And if before this act of the lord,
a stranger, who had no right, made entry, and got pos-
session of the freehold, having the seisin and investiture
thereof given to him by the lord, through his connivance,
the heir or devisee was obliged to make an actual entry
before he could bring trespass; for the *abator* had the *ac-*
*tual freehold* until the entry of the heir or devisee; and no
principle can be more clear than that no action of trespass
can be supported against the *actual tenant of a freehold.*
That the abator obtains possession of the *freehold,* and is
the tenant of the freehold, the following authorities prove:
"*Abatement* is where a person dies seized of an inheri-
tance, and before the heir or devisee enters, a stranger,
who has no right, makes entry and *gets possession of the*
*freehold.*" 3 *Blk. Com.* 167. These ousters, (that is
abatement and intrusion,) *are ousters from freeholds in*
*law,* which is done by getting themselves substituted to be
tenants of the lord, instead of the heir, devisee, remain-
derman or reversioner. *Ibid* 169, 170. If my father
dies seized, and no one enters, there is seisin *in law* in
the heir, (not in fact till the lord invests him;) and *pre-*

1810.
Shipley
vs
Alexander

*cipe quod reddat* may be brought against him as tenant of the freehold; but *if one abates*, the *precipe quod reddat* must, in that case, be against the *abator*, he being *tenant of the freehold in fact. Brook*, tit. *Seisin*, pl. 13. And as the *abator* and *intruder* became actual tenants of the freehold by the abatement or intrusion, so did the disseisor by his disseisin. Disseisin is an *ouster from a freehold in deed.* 3 *Blk. Com.* 169. Disseising is *dispossessing the tenant* and *substituting oneself to be tenant of the lord. Ibid.* 171. *Every entry* is not a *disseisin*, but there must also be an *ouster of a freehold. Co. Litt.* 181,a. Disseisin, therefore, must mean some way or other of dispossessing and turning the tenant *out of his tenure*, and *usurping* his place and feudal relation, &c. *Taylor vs. Horde,* 1 *Burr.* 107. *Disseisin* was a complicated fact, and differed from *dispossessing.* The *freeholder* by *disseisin* differed from a *possessor by wrong. Ibid* 108. A disseisin made the disseisor *tenant* to every demandant, and *freeholder de facto*, in spite of the true owner. *Ibid* 111. And hence, though the disseisee might punish the disseisor for the *act of disseisin*, it being an injury to his freehold, of which he had at that time the actual possession, yet the disseisee could not bring actions of trespass against the disseisor, for subsequent injuries to the property, before he obtained the possession of the freehold by entry; because those subsequent injuries were acts of a *freeholder de facto.* But when he re-entered on the disseisor, he was by relation considered as having ever remained in possession of his freehold, and therefore could sustain trespass against the disseisor. These remarks explain the passages in *Buller, Blackstone* and *Espinasse*, which have been cited, and others which may be found in other elementary writers; they relate to such wrongful *ousters* as gave the wrongdoer a *freehold de facto*, until defeated by entry; and though the *consequences* of *actual disseisins*, (and also of actual abatements and intrusions,) considered *as such* in *England*, as Lord *Mansfield* in *Taylor vs. Horde*, 1 *Burrows*, 112, informs us, still exist; yet such has been long since the alterations of tenure, and of alienation of real property, that there cannot be an *actual disseisin*, abatement or intrusion; for disseisin by *election* is very different from *actual* disseisin, and *the freeholder, by disseisin*, differed from a *possessor* by wrong. *Ibid* 108, 111. As the

law has long ceased to exist in *England*, under which *actual* abatements, intrusions or disseisins, could take place, so in this state no such law *ever existed*. We therefore cannot be subject to any provisions or consequences which might arise or result from such law. What then is the situation of the citizens of this state? When a person seized of land dies, as there is no act to be done by a lord, or any body else, to give seisin or investiture; and as no person by a tortious entry can, through the consent or connivance of a lord, or any other person, obtain a *freehold de facto*, the consequence follows, of course, that the heir or devisee immediately becomes tenant of the freehold, not only *de jure* but *de facto*. He has not only seisin and possession in law, but in fact; for whoever has the right is considered in law to be in possession according to his title, until there has been a wrongful possession against him for twenty years. So is the law as to alienees of lands under any other mode of alienation. Hence it follows, that no actual entry is requisite to enable an heir or devisee, or any alienee, to punish a wrong doer for injuries done to the real estate, as the law considers them in actual possession according to their title, and as the wrong doer cannot, by his tortious act, acquire to himself a *freehold de facto*. Hence also, whoever has title may *devise*, and may convey by bargain and sale, by lease and release, &c. his lands, and is considered in possession for that purpose, although a wrong doer has entered upon those lands, unless such wrong doer has had adverse possession for twenty years, and so far only as he has had such adverse possession. A citizen of this state may *elect* to consider himself out of possession, for the purpose of bringing an action of ejectment, as in *Great Britain*, a person may elect to consider himself disseised for the sake of the remedy, but this doth not cause him to be *actually* out of possession. Wherever a person here can bring ejectment, he can bring trespass, at his option. Nay, he can bring both at the same time; for if *A* enters upon the land of *B*, takes possession of it, and cuts down trees, or cultivates the ground, *B* may bring trespass to recover damages for the cutting or cultivation; and he may also at the same time prosecute ejectment with a view of *dispossessing A;* and after judgment in ejectment *B* may bring an action for mesne profits, arising *subsequent to the writ of trespass.*

1810.

Johnston
vs
Cope.

Such is considered to be the law in this state. The plaintiff in ejectment may bring an action of trespass for the mesne profits, pending a writ of error. *Run. Eject.* 423. *Donford vs. Ellys,* 12 *Mod.* 138.

BUCHANAN, J. delivered the opinion of the court. The court agree with the court below in the opinion contained in the bill of exceptions on which this case is brought up.

The question is, whether, in an action of trespass brought in the name of the lessor of the plaintiff against the tenant in possession, for mesne profits, from the time of the demise, it is necessary for the plaintiff to prove an entry or actual possession in him after the recovery in ejectment?

On that question the court have no doubt.

The tenant in possession is estopped by his confession of lease, entry and ouster, and cannot controvert either the title or possession of the plaintiff; and it is sufficient for the plaintiff to produce the judgment alone, without showing the writ of execution executed, or possession acquired in any other manner.

JUDGMENT AFFIRMED.